Argued June 7, 1966, affirmed June 14, 1967

CASEY, *Appellant, v.* MANSON CONSTRUCTION
AND ENGINEERING COMPANY ET AL,
*Respondents.*

428 P. 2d 898

*Thomas J. Curran,* Portland, argued the cause and filed a brief for appellant.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondents. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, HOLMAN, LUSK and HAMMOND,[*] Justices.

LUSK, J.

This is an action by a wife for the loss of her husband's consortium as the result of injury sustained by her husband through the alleged negligence of the defendants. The circuit court sustained a demurrer to the complaint based on the ground that the complaint showed that the accident in which the plaintiff's husband was injured occurred in the State of Washington where an action for loss of consortium by a wife or widow is not recognized. The plaintiff refused to plead further and judgment was entered for the defendants from which the plaintiff has appealed.

The complaint alleges the following facts: Plaintiff and her husband, Donald J. Casey, are and were at all pertinent times residents and inhabitants of Multnomah County, Oregon. The defendant Manson Construction and Engineering Company is a Washington corporation which has a registered agent for service in the State of Oregon and does business here and

---

[*] Did not participate in this decision.

the defendant Osberg Construction Company is a Washington corporation licensed to do business within the State of Oregon. The defendants formed a joint adventure under the name of Manson-Osberg Company to construct a dam and its appurtenances on property owned by Washington Public Power Supply System adjacent to Packwood, Washington. In connection with this work Manson-Osberg constructed an access road running to the damsite. On or about September 9, 1963, Donald J. Casey was a business invitee upon this access road and was driving a semi-auto car tractor loaded with pipe, when the road gave way beneath the vehicle, causing it to tip over into a deep ravine. Plaintiff's husband sustained permanent injuries as a result. The defendants were negligent in the construction of the road, in failing to maintain it in a safe driving condition and to keep it in proper repair, and in failing to warn plaintiff's husband of its dangerous condition. As a result of the defendants' negligence and the injuries to her husband the plaintiff has lost the sexual consortium, companionship, comfort, and earning power of her husband, to the plaintiff's damage in the sum of $95,000.00.

Washington adheres to the common law rule which denies to the wife a right of action for loss of consortium resulting from a negligent injury to her husband: *Ash v. S. S. Mullen, Inc.*, 43 Wash 2d 345, 261 P2d 118 (1953). In Oregon that right is conferred by statute: ORS 108.010. The question is whether the law of Oregon or that of Washington governs this case.

■ This court has heretofore been committed to the traditional choice-of-law rule that in tort cases the law of the place of wrong—*lex loci delicti*—governs: *Nadeau v. Power Plant Engr. Co.*, 216 Or 12, 20, 337 P2d 313 (1959). In *Lilienthal v. Kaufman*, 239 Or 1, 395

P2d 543 (1964), however, we abandoned the mechanical application of the corresponding rule in contract cases —*lex loci contractus*. We there said:

"There is no need to decide that our previous statements that the law of the place of contract governs were in error. Our purpose is to state that this portion of our decision is not founded upon that principle because of our doubt that it is correct if the *only* connection of the state whose law would govern is that it was the place of making." 239 Or at 7.

The reasons given in *Lilienthal* to support the foregoing statement lead to the conclusion that *lex loci delicti* is no longer to be regarded as an article of faith in tort cases. This is not to say, of course, that the place of wrong has ceased to be a relevant circumstance; on the contrary, it may, in connection with other circumstances, be a decisive factor.

The cardinal virtue of the traditional rule was its certainty, ease of application, and predictability. Departure from that rule, where it has been departed from①—largely due to the labours and prolific writings of legal scholars—has left a difficult problem of formulating a rule to take its place. As Chief Judge Sobeloff observed in *Lowe's North Wilkesboro Hdwre. v. Fidelity Mut. Life Ins. Co.*, 319 F2d 469, 473 (4th Cir 1963):

"In failing to formulate the reasons for applying the law of a foreign forum, the North Carolina

---

① The trend is away from *lex loci delicti*, though in several recently decided cases the courts have not been persuaded: White v. King, 223 A2d 763 (Md 1966) (guest case); McDaniel v. Sinn, 194 Kan 625, 400 P2d 1018 (1965); Friday v. Smoot, 211 A2d 594 (Del 1965) (guest case); Cherokee Laboratories, Inc. v. Rogers, 398 P2d 520 (Okla 1965) (limitation of damages); Landers v. Landers, 153 Conn 303, 216 A2d 183 (1966) (interspousal immunity); Goranson v. Capital Airlines, Inc., 345 F2d 750 (6th Cir 1965).

court has not differed from other jurisdictions; and even in multi-state torts courts have with few exceptions merely chosen whatever rule seemed reasonable for the particular case under adjudication, without attempting to formulate the reasons for selecting that rule. Scholars and commentators have had little more success in providing guidelines for choosing the proper and just rule. Against every rule applied and every proposal made great clouds of criticism have been raised, and each commentator appears to have a different 'best' solution for the difficulty. The applicable rules for a conflicts law of torts have constantly changed in the ceaseless search for a just and fair resolution of the problem."

And the opinion quotes, in a footnote, the following comment by one of the outstanding scholars in this field:

" 'Despite the keen insight and illuminating analyses offered by some scholars, that appears to be the net effect of the rather large amount of recent learned writing in the field. After reading the articles, one understands the problem a great deal better, but he is no nearer to the answer unless he has been converted to one or another of the controversial views set out in them.' Leflar 'Choice of Law: Torts: Current Trends,' 6 Vand. L. Rev. 447, 457 (1953)."

The attack upon the traditional rule has had its influence with The American Law Institute and has led to proposed modifications of its choice-of-law rules. See *Lilienthal v. Kaufman,* supra, 239 Or at 7. Section 379 of Tentative Draft No. 9, April 24, 1964, Second Restatement, Conflict of Laws, reads:

"(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.

"(2) Important contacts that the forum will consider in determining the state of most significant relationship include:

"(a) the place where the injury occurred,

"(b) the place where the conduct occurred,

"(c) the domicil, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states."

Although the proposed rule of the Restatement has not met with a large measure of approval by the scholars,[a] it has been, to a greater or less extent, taken as a guide by a number of the courts. In some cases, however, courts have resorted to other theories in order to avoid what were deemed to be undesirable consequences flowing from application of *lex loci delicti*. *Kilberg v. Northeast Airlines, Inc.*, 9 NY2d 34, 172 NE2d 526 (1961), is a prime example. Plaintiff administrator sued to recover damages for the wrongful death of a passenger on an airplane which crashed in Massachusetts. The decedent was a domiciliary of New York, where the journey commenced. Under New York law (written into its Constitution) there is no limit on the recoverable damages in a death action. The Massachusetts wrongful death statute limited recovery to $15,000. A divided court held that the measure of damages was a procedural or remedial question controlled by the law of New York. Beyond that, the opinion pointed out that in such a case the place of injury is "entirely fortuitous" and emphasized

[a] See, e.g., Ehrenzweig, Conflict of Laws 548, § 211.

the policy aspects of the decision. The court said: "For our courts to be limited by this damage ceiling (at least to our own domiciliaries) is so completely contrary to our public policy that we should refuse to apply that part of the Massachusetts law": 9 NY2d at 40.[9]

We proceed to a review of other decisions in this area rendered over the past quarter of a century.

Where the question was one of immunity from suit because of interfamily relationship, the domicile of the parties was accorded controlling significance in *Emery v. Emery,* 45 Cal 2d 421, 289 P2d 218 (1955), and *Haumschild v. Continental Casualty Co.,* 7 Wisc 2d 130, 95 NW2d 814 (1959). The question was said to be not of tort law but of capacity to sue and be sued. Somewhat similarly, a question of survivorship in an action for wrongful death was held to be governed by the law of the forum, which was also the state of the domicile of the parties: *Grant v. McAuliffe,* 41 Cal 2d 859, 264 P2d 944, 42 ALR2d 1162 (1953). "Basically," the court said, "the question is one of the administra-

[9] The New York wrongful death statute had no extraterritorial effect: Baldwin v. Powell, 294 NY 130, 61 NE2d 412 (1945); Debevoise v. N.Y., L.E. & W.R.R.Co., 98 NY 377, 50 Am Rep 683 (1885); McDonald v. Mallory et al, 77 NY 546, 33 Am Rep 664 (1879); Crowley v. Panama Rail Road Company, 30 Barbour 99 (NY 1859). The action was brought under the Massachusetts wrongful death statute and the court selected as applicable law that part of the statute which created the right of action, but New York law as to damages. This feature of the case led to an attack in the Federal court on the constitutionality of the holding in another death case arising out of the same airplane accident, but the in banc court of nine judges (three judges dissenting) held that there was no violation of either the Full Faith and Credit or Due Process clauses of the United States Constitution: Pearson v. Northeast Airlines, Inc., 309 F2d 553 (2d Cir 1962), 92 ALR2d 1162, cert den 372 US 912, 83 S Ct 726, 9 L ed 2d 720, overruling panel decision in the same case: 307 F2d 131 (2d Cir 1962). So much of the *Kilberg* decision as held the measure of damages to be procedural, rather than substantive, was apparently overruled in Davenport v. Webb, 11 NY2d 392, 183 NE2d 902 (1962).

tion of decedents' estates, which is a purely local proceeding": 41 Cal 2d at 866.

*Schmidt v. Driscoll Hotel, Inc.,* 249 Minn 376, 82 NW2d 365 (1957) involved a Minnesota statute which provided that if a person illegally sells intoxicating liquor to another, causing him to become intoxicated, the seller is liable for damages to one who is injured by the intoxicated person. The defendant sold liquor illegally in Minnesota and the plaintiff was injured in Wisconsin when an automobile in which he was a passenger and which was driven by the intoxicated person turned over. Wisconsin had no law similar to the Minnesota statute. All parties involved were residents of Minnesota. The court held that this was not an appropriate case for applying the traditional rule, since the interests of both states lay in the enforcement of the Minnesota statute—that of Wisconsin "in affording whatever remedies it deems proper for those injured there as the result of foreign violations of liquor laws" and that of Minnesota "in admonishing a liquor dealer whose violation of its statutes was the cause of such injuries; and in providing for the injured party a remedy therefor * * * ." 249 Minn at 380.

*Gordon v. Parker,* 83 FS 40 (D Mass 1949) was an action for alienation of affections. The plaintiff and his wife were residents of Pennsylvania. The defendant was a resident of Massachusetts and it was there that the wrongful conduct took place and the wife's affections alienated. A Pennsylvania statute abolished all actions for alienation of affections. Massachusetts permitted such actions in modified form. The defendant, in contending that the law of Pennsylvania should be applied, argued that, since the asserted damage was inflicted on a marriage relationship, the question of

liability should be determined by the law of the state of marital domicile. In a very able opinion by Judge Wyzanski the court held that there was no sufficient reason for departing from the traditional rule which prevails in Massachusetts. Pennsylvania, it was said, had an interest in "whether conduct in any part of the world is held to affect adversely the marriage relationship between its domiciliaries": 83 FS at 42, but the interest of Massachusetts was greater. "She is concerned with conduct within her borders which in her view lowers the standards of the community where they occur. She is also concerned when her citizens intermeddle with other people's marriages." Id. The court further pointed out that, while tort law always has an element of compensation, "that is of secondary consequence where, as in the tort of alienation of affections, the principal reason why the state stamps conduct as wrongful is that so many people regard it as sinful, so many regard it as offensive to public morals, and so many are likely to take matters into their own hands if public tribunals are not available." Id.

*Babcock v. Jackson,* 12 NY2d 473, 191 NE2d 279, 95 ALR2d 1 (1963) is generally regarded as the landmark case. Miss Babcock sued for injuries sustained when the automobile in which she was riding as a guest and which was driven by the defendant Jackson went out of control. The accident occurred in the Province of Ontario, Canada, in the course of a weekend trip from Rochester, New York. Miss Babcock and Jackson were New York residents. Under Ontario law a guest in an automobile has no right of recovery against the negligent host; New York allows recovery for ordinary negligence. The court, in an opinion by Judge Fuld, applied New York law, two judges dissenting. The

court approved the so-called "center of gravity" or "grouping of contacts" doctrine, and said:

> " * * * Justice, fairness and 'the best practical result' (Swift & Co. v. Bankers Trust Co., 280 N. Y. 135, 141, supra) may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. The merit of such a rule is that 'it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context' and thereby allows the forum to apply 'the policy of the jurisdiction "most intimately concerned with the outcome of [the] particular litigation." ' (Auten v. Auten, 308 N. Y. 155, 161, supra.)" 12 NY2d at 481-482.

The court said that this was the approach adopted in the Tentative Draft of the Restatement, above referred to, and continued:

> "Comparison of the relative 'contacts' and 'interests' of New York and Ontario in this litigation, vis-a-vis the issue here presented, makes it clear that the concern of New York is unquestionably the greater and more direct and that the interest of Ontario is at best minimal. The present action involves injuries sustained by a New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged, licensed and undoubtedly insured in New York, in the course of a weekend journey which began and was to end there. In sharp contrast, Ontario's sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there." 12 NY2d at 482.[4]

It should be noted that Judge Fuld, dissenting in

---

[4] A symposium of comment by learned writers upon this decision is found in 63 Columbia L. Rev. 1212 et seq.

*Dym v. Gordon,* 16 NY2d 120, 209 NE2d 792 (1965), hereinafter reviewed, thus explained the basis of the Babcock decision:

> "Nor is my conclusion as to the superiority of New York's claim for the application of its law in this case in any way grounded—as suggested in the majority opinion (p. 124)—on a 'quantitative' assessment of the contacts of the respective jurisdictions, or on the decisive effect of any *single* such factor as domicile or the public policy of this State. Rather, the essential inquiry, is, and has been, to determine whether it is Colorado or New York which has 'the greatest concern with the specific issue raised in the litigation.' (Babcock v. Jackson, 12 N Y 2d 473, 481, *supra.*). * * * " 16 NY2d at 133-134.

One of the reasons emphasized in the *Babcock* case for finding that the "specific issue" concerned Ontario very little lay in the object of Ontario's guest statute— to prevent fraudulent collusive claims by passengers against insurance companies. "Whether New York defendants" the court said "are imposed upon or their insurers defrauded by a New York plaintiff is scarcely a valid legislative concern of Ontario simply because the accident occurred there, any more so than if the accident had happened in some other jurisdiction": 12 NY2d at 483.

Similar decisions in cases involving automobile guest statutes are *Clark v. Clark,* 107 NH 351, 222 A2d 205 (1966) (cf. *Dow v. Larrabee,* 107 NH 70, 217 A2d 506 (1966)); *Wilcox v. Wilcox,* 26 Wisc 2d 617, 133 NW2d 408 (1965); and *Macey v. Rozbicki,* 18 NY2d 289, 221 NE2d 380 (1966). No review of the New York cases would be complete, however, without noticing *Dym v. Gordon,* supra. This decision came between *Babcock* and *Macey.* It involved a guest statute of

Colorado and an injury to an automobile passenger in Colorado. As in *Babcock*, the plaintiff and defendant were both residents of New York and the car and insurance were based in New York. The court in a four to three decision applied Colorado law. The opinion approved the *Babcock* rule, but the factor which seemed to the majority mainly to differentiate the two cases was that the parties were both temporarily residing in Colorado and their relationship was formed in that state. The court said that "the jurisdiction where the relationship was seated had the primary interest in having its laws applied": 16 NY2d at 126. When *Macey v. Rozbicki,* which was practically on all four's with *Babcock*, came before the court, the rule of *Babcock* was reaffirmed and New York law was applied. Judge Keating, in a concurring opinion, expressed the view that *Dym* and *Babcock* could not be reconciled and that the former should be overruled. See "Conflict of Spirit: Babcock v. Dym," 22 Intramural Law Review 119; "The Aftermath of Babcock," 54 Calif. L. Rev. 1301, 1307.[9]

Following the *Kilberg* precedent (though not all its reasoning), the courts have applied the law of the forum in favor of the forum's domiciliaries in several other death cases arising out of airplane accidents: *Gore v. Northeast Airlines, Inc.,* 373 F2d 717 (2d Cir 1967) (this case grew out of the same airplane crash as in *Kilberg* and the court applied New York conflict

[9] Kell v. Henderson, 47 Miscl 2d 992, 263 NYS2d 647, aff'd 26 App Div 2d 595, 270 NYS2d 552 (1966), is illustrative of the confusion created by Dym v. Gordon, supra. The facts in the *Kell* case were the reverse of those in *Babcock*, as the litigation grew out of an automobile trip by residents of Ontario into New York, where the accident occurred. A *nisi prius* judge, relying largely on some of the language in *Dym*, held the law of New York and not the Ontario guest statute applicable. The decision can, perhaps, be reconciled with *Babcock* and *Macey* on the basis of the New York Court of Appeals' obvious distaste for guest statutes.

of laws rules); *Griffith v. United Air Lines, Inc.,* 416 Pa 1, 203 A2d 796 (1964); *Hopkins v. Lockheed Aircraft Corp.,* 201 S2d 743 (Florida Supreme Court, February 1, 1967), 35 US Law Week 2485. See, also, *Long v. Pan Amer. World Airways,* 16 NY2d 337, 213 NE2d 796 (1965), in which the New York court, a neutral forum, applied Pennsylvania law respecting recoverable damages in a death action arising out of the crash of an airplane in Maryland. The deceased persons resided in Pennsylvania and had purchased their tickets in Philadelphia for round trip flights from that city to San Juan, Puerto Rico. The accident occurred on the return trip. The common features of these cases are that the place of injury was fortuitous and the contract of transportation was entered into in the state where the plaintiffs resided. Where, however, in a death action arising out of an airplane crash in Brazil the court perceived that the policy behind Brazil's limitation of damages in death cases was the protection of the financial integrity of Brazilian airlines, and the relevant events all occurred in Brazil, the domicile of the plaintiffs was deemed of little significance and the foreign state's limitation was applied: *Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense,* 350 F2d 468 (DC Cir 1965); *Ciprari v. Servicos Aereos Cruzeiro,* 245 FS 819 (SD NY 1965).

*Lowe's North Wilkesboro Hdwre. v. Fidelity Mut. Life Ins. Co.,* supra, was an action by a North Carolina corporation, commenced in a North Carolina Federal Court, against an insurance company with its principal office in Pennsylvania, to recover damages for negligent delay in acting upon an application for a policy of life insurance upon the life of the plaintiff's president. Before the policy could be issued the president of the corporation died. Pennsylvania did not recog-

nize such a cause of action and, in deciding the case, the court assumed that North Carolina did. Pursuing a flexible approach "which would allow the court in each case to inquire which state has the most significant relationships with the events constituting the alleged tort and with the parties," 319 F2d at 473, the court held that the law of Pennsylvania should be applied, because it was there that the important events upon which liability would rest occurred. Pennsylvania was the home office of the defendant; there only could the application be acted upon, and there the alleged delay took place. Neither the domicile of the insured nor of the plaintiff corporation could "be accorded dominant importance in fixing the location of the tort": 319 F2d at 474.

We conclude our review of the decisions with a reference to *Watts v. Pioneer Corn Company,* 342 F2d 617 (7th Cir 1965), a death action arising out of the collision of automobiles in Illinois in which a Federal Court in Indiana applied the law of that state which did not authorize such an action unless the deceased left dependents. The deceased left no dependents. Under Illinois law the action could have been maintained. All the parties were residents of Indiana. The court reasoned that the Indiana requirement of dependents would be circumvented by the "fortuitous" occurrence of the accident in Illinois and that Illinois "does not have a sufficiently substantial interest in the recovery of damages by Indiana beneficiaries from Indiana defendants": 342 F2d at 620.

■ Careful consideration of these decisions, as well as of the extensive writings on the subject, persuade us that we should adopt for tort actions the rule of "most significant relationship with the occurrence and

with the parties" as set forth in the Tentative Draft of the Restatement.

Application of that rule to the facts of this case is fraught with difficulty. The court in *Clark v. Clark,* supra, observed that "[t]his case is a comparatively easy one": 222 A2d at 210. It was so indeed, for the only connection of Vermont, the foreign state, with the issue was that the accident occurred there in the course of a motor trip from one town in New Hampshire to another. It cannot be said, however, that we are dealing here with an easy case. It differs in important particulars from any of those which we have examined in which the courts have refused to apply the law of the place of the wrong. There was nothing fortuitous here about the place of the accident;[⑥] it could not have happened anywhere except on the negligently constructed and maintained road in the State of Washington. See *Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense,* supra, 350 F2d at 472. Again, this is not an action between residents of Oregon, but is brought by an Oregon domiciliary against two Washington corporations. Both defendants, it is true, are licensed to transact business in Oregon and one of them does so, though we are not advised as to the extent of that business, but the only business of these defendants having any connection with this case was the construction of a hydroelectric dam in Washington and, as incident thereto, the building and maintenance of the access road where the accident occurred. By con-

---

[⑥] "All of the commentators and all of the cases that end up in disagreement with the unbending application of *lex loci* have a common thread that runs through the skein of rationale, and that thread is that the place of the occurrence of an unintentional tort is fortuitous, and it is by mere happenstance that the *lex loci* state is concerned at all. The most-dramatic instance of this type of fortuitousness is the case where an airplane is forced off its course and crashes in a state or country that was not on its route." Wilcox v. Wilcox, supra, 26 Wis 2d at 629-630.

trast, in all the cases of injury by accident which have come to our attention and in which the courts have disregarded the law of the place of the wrong, except the airplane cases, the parties were residents of the state where the action was brought; while in each of the airplane cases which applied the law of the forum rather than of the place of the wrong, the airline maintained an office in the state of the forum, its planes landed and took off there and the ticket for the journey which ended in disaster was purchased there.

In all these cases, moreover, there were potent reasons for finding that the foreign state had either "no conceivable interest": *Babcock v. Jackson,* supra, 12 NY2d at 482, or "relatively little interest": *Griffith v. United Air Lines, Inc.,* supra, 416 Pa at 23, in the resolution of a dispute in the forum state between its residents as to whether the law of the foreign state should govern.

And, of course, the issue here cannot be disposed of by characterizing it as something other than one of substantive tort law as in *Grant v. McAuliffe,* supra, and like instances. Concerning such cases, it has been said that there is no real conflict of laws: Traynor, "Is This Conflict Really Necessary?" 37 Texas L. Rev. 657, 669, 670. Here we have unavoidable conflict.

As to the underlying policies involved and the interests of the respective states, it is to be presumed that the Oregon Legislature deemed it desirable that an anachronistic common law rule,[7] Prosser on Torts (3d

---

[7] Before the enactment of ORS 108.010, the action of consortium by a wife was not recognized in Oregon: Sheard v. Oregon Electric Ry. Co., 137 Or 341, 2 P2d 916; Kosciolek v. Portland Ry., L. & P. Co., 81 Or 517, 160 P 132. It is recognized by judicial decision in 14 jurisdictions: Missouri-Pacific Trans. Co. v. Miller, 227 Ark 351, 229 SW2d 41 (1957); Yonner v. Adams, 53 Del 229, 167

ed) 917, should be removed, and a wife accorded the same right as a husband to recover for a similar injury, though not to the same extent, because, with regard to the service element of consortium, in order to prevent a double recovery, the husband's recovery would be taken into account in measuring the wife's damages: *Hitaffer v. Argonne Co.,* 183 F2d 811, 814 (DC Cir 1950), 23 ALR2d 1366; *Ekalo v. Constructive Serv. Corp. of America,* 46 NJ 82, 215 A2d 1 (1965); Prosser, op. cit. 917. Since it must be presumed that if the wife is entitled to recover for loss of consortium the husband is also entitled to recover for his personal injury, this state's chief concern is that a wife's loss of her husband's society and affection should not go uncompensated.

Washington's policy is in one aspect rather negative than affirmative. Her highest court announced

---

A2d 717 (1961); Hitaffer v. Argonne Co., 183 F2d 811 (DC Cir 1950), 23 ALR2d 1366; Hightower v. Landrum et al, 109 Ga App 510, 136 SE2d 425 (1964); Dini v. Naiditch, 20 Ill 2d 406, 170 NE2d 881, 86 ALR2d 1184 (1960); Ziegler v. United States Gypsum Co., Inc., 251 Iowa 714, 102 NW2d 152 (1960); Montgomery v. Stephan, 359 Mich 33, 101 NW2d 227 (1960); Novack v. Kansas City Transit, Inc., 365 SW2d 539 (Mo 1963); Duffy v. Lipsman-Fulkerson & Co., 200 FS 71 (D Mont 1961); Luther v. Maple, 250 F2d 916 (8th Cir 1958); Ekalo v. Constructive Serv. Corp. of America, 46 NJ 82, 215 A2d 1 (1965); Roseberry v. Starkovich, 73 NM 211, 387 P2d 321 (1963) (for intentional or malicious torts only); Heller v. Spyridon, 37 Miscl 2d 474, 235 NYS2d 168 (1962) (for intentional torts only); Hoekstra v. Helgeland, 78 SD 82, 98 NW2d 669 (1959).

In Owen v. Illinois Baking Corporation, 260 FS 820 (WD Mich 1966), a federal court sitting in Michigan held that the law of Indiana denying a wife a right of action for loss of consortium was unconstitutional as depriving her of the equal protection of the law. We do not follow that decision.

Both the New Mexico Court, Roseberry v. Starkovich, supra, and Professor Jaffe, "Damages for Personal Injury: The Impact of Insurance," 18 Law and Contemporary Problems 219, think that neither husband nor wife should have an action for loss of consortium based on mere negligence.

more than 13 years ago that no such action could be maintained unless the legislature provided for it and the legislature has not done so. Washington, of course, has no concern with whether an Oregon wife recovers for loss of consortium in an Oregon court, but Washington has a legitimate concern in whether she recovers against Washington residents when the wrong giving rise to the action occurs in Washington in circumstances such as those we deal with here. Washington has a legitimate concern with whether her residents engaged in a construction job there—in this case a job related to the public interest—should be disappointed in their reasonable expectation that the extent of their liability for negligent conduct in Washington be governed by the law of that state, regardless of the domicile of an injured plaintiff. It bears repetition that this case is to be distinguished from those in which the place of injury is a mere happenstance.

Section 379a of the Tentative Draft of the Restatement, April 24, 1964, reads:

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern."

Elaborating on this rule in Comment f under Section 379a it is said:

"The state where the conduct occurred is most likely to be the state of most significant relationship when these two elements are combined, that is to say, when, in addition to the injured person's being domiciled or residing or *doing business* in the state, the injury occurred in the course of an activity or of a relationship which is centered there.

One example is where the injury occurred in the course of an employment which is centered in the state where the conduct took place and where the injured person is domiciled." (Italics added.)

Section 380a of the Tentative Draft of the Restatement reads:

"The law selected by application of the rule of § 379 determines whether the interest affected is entitled to legal protection."

Although, for the purpose of determining a question of estoppel by judgment the right of action for loss of consortium is not considered derivative, but, independent, *Wolff v. DuPuis,* 233 Or 317, 378 P2d 707 (1963), yet it cannot be disputed that it is in fact derivative, for it arises only as the result of injury to the other spouse; and so it is held that in such actions the place of the conduct, not of the marital domicile, is the place of the injury: *Jordan v. States Marine Corporation of Delaware,* 257 F2d 232 (9th Cir 1958); *Thevenot v. Sieber,* 204 FS 15 (SD NY 1962); *McVickers v. Chesapeake and Ohio Railway Company,* 194 FS 848 (ED Mich 1961); *Conway v. Ogier,* 115 Ohio App 251, 184 NE2d 681 (1961).

Accordingly, in Comment a under Section 380a, the authors of the Restatement say: "Likewise, when a spouse suffers personal injury the law selected by application of the rule of Section 379 [the "most significant relationship" rule] should determine whether the other spouse may recover for loss of consortium, namely for the loss of the injured spouse's companionship, services and conjugal affection."

While consideration should be given, we assume, to the interest of Oregon arising from the fact that the effects of the injury are experienced by the plaintiff in this state, we, nevertheless, have a case in which

both conduct and injury occurred in Washington when the plaintiff's husband was a business invitee of the defendants on land in their possession and control.

■ We conclude that Washington has the most significant relationship with the occurrence and with the parties and that Washington's law should govern the issue presented by the demurrer to the complaint. We think that none of the recent decisions refusing to apply the law of the state of the injury to the particular circumstances of those cases can be cited as authority for a different result, and that our decision finds support in such cases as *Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense*; *Ciprari v. Servicos Aereos Cruzeiro*; *Lowe's North Wilkesboro Hdwre. v. Fidelity Mut. Life Ins. Co.*; *Watts v. Pioneer Corn Company*, all supra.

The view has been expressed, though not, so far as we are aware, by any court, that if both the forum state and the foreign state have legitimate interests in the application of their laws the court should apply the law of the forum: Currie, Selected Essays on the Conflict of Laws, 189. That, it would seem, is the policy expressed in the Uniform Commercial Code with respect to transactions controlled by that enactment: ORS 71.1050 (1).[9] Nevertheless, we are warned by

---

[9] "Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement the Uniform Commercial Code applies to transactions bearing on appropriate relation to this state."

Although not in effect at the time of the transaction involved in Lilienthal v. Kaufman, supra, the section nevertheless lends support to the decision in that case applying the spendthrift statute of this state to an action on promissory notes executed and payable in California. See Gresham State Bank v. O & K Con. Co., 231 Or 106, 118-119, 370 P2d 726, 372 P2d 187, 100 ALR2d 654.

highly regarded authority that "[s]tate chauvinism and interstate retaliation are dangers to be avoided": *Clark v. Clark,* supra, 222 A2d at 208, and against "the shortsighted intolerance of rejecting all law save our own": Leflar, "Choice of Law: Torts: Current Trends," 6 Vand. L. Rev. 447, 456. And see Cavers, The Choice of Law Process, 146, 303, 306. As Chief Judge Magruder said in *Jansson v. Swedish American Line,* 185 F2d 212, 219 (1st Cir 1950), 30 ALR2d 1385:

> "In developing the body of rules governing choice of law problems, the ideal in view is the recognition, by common consent of the states and nations having civilized systems of law, of a proper substantive law of the transaction at hand, to be uniformly applied regardless of the forum in which the litigation happens to be instituted. No doubt this ideal cannot be fully realized without the aid of international convention. But measurable advances have been made; and further progress to that end is possible if courts would not be too predisposed to apply the law of the forum with which they are of course most familiar, instead of candidly examining to see whether the transaction as a whole, in its more important aspects, is not centered in some other jurisdiction, whose law would therefore more appropriately be selected as the applicable law."

The judgment is affirmed.

HOLMAN, J., concurring.

After consideration of all the circumstances and the situation as a whole, it seems more logical to apply the law of the State of Washington. If it were otherwise, Washington citizens carrying on activities in Washington would have to lift their financial protection to an unaccustomed level and one which would be dependent upon the locality from which the injured

party might come. Theoretically, citizens of Washington could be subjected to 49 different levels of responsibility for acts done within their state of residence, and this seems to me highly undesirable. It seems more reasonable that under the present circumstances " * * * By entering the state or nation, the visitor has exposed himself to the risks of the territory and should not expect to subject persons living there to a financial hazard that their law had not created."[1]

At this time I am doubtful that I desire to be finally wedded to the methods of the second restatement as set forth in the majority opinion.

GOODWIN, J., concurs in this opinion.

---

[1] Cavers, The Choice-of-Law Process (1965), 147.