Mary WRIGHT, et al., Plaintiffs,

v.

Ray MINTER, D.O., et al., Defendants.

No. 89–6117–CV–SJ–8.

United States District Court, W.D. Missouri, St. Joseph Division.

May 15, 1990.

Ronald M. Sokol, St. Joseph, Mo., and George A. LaMarca and Gregory W. Lan-

dry, LaMarca & Landry, P.C., West Des Moines, Iowa, for Mary Wright, Wayne Wright, Melinda Wright, Rachel Wright, by her Father, Next Friend, and Legal Guardian, Wayne Wright.

Jayson A. Ford and Richard D. Simpson, Jacobson, Maynard, Tuschman & Kalur, Kansas City, Mo., for Ray Minter, D.O.

Ronald R. McMillin, Jefferson City, Mo., for Thomas M. Wilson, D.O.

Colly Frissell–Durley and Raymond C. Lewis, Jr., Smith, Lewis, Beckett & Powell, Columbia, Mo., for W. Stephen Casady, D.O.

Steven D. Steinhilber and James S. Stubbs, Sherman, Wickens & Lysaught and Donald G. Stubbs, Stubbs & Mann, P.C., Kansas City, Mo., for Ohio Medical Co. a/k/a Ohmeda and Airco, Inc.

Jill Frost and Randa C. Rawlins, Niewald, Waldeck, Norris & Brown, P.C., Kansas City, Mo., for Keuffell & Esser Co. and Azon Corp.

Timothy W. Triplett and Diana Moore, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, Kan., for Puritan–Bennett Corp.

## ORDER

STEVENS, District Judge.

Plaintiff Mary Wright filed this lawsuit after suffering injuries during surgery. She alleges various medical malpractice claims against the individual defendants and products liability claims against the corporate defendants. Plaintiff Wayne Wright alleges a derivative cause of action for loss of spousal consortium and plaintiffs Rachel Wright and Melinda Wright allege derivative causes of action for loss of parental consortium. The case is currently before the court on defendants' separate motions[1] to dismiss Rachel and Me-linda Wright for failure to state a claim on which relief may be granted.

In support of their motions defendants argue that the claims of plaintiffs Rachel and Melinda Wright must be dismissed because Missouri does not recognize a cause of action for loss of parental consortium. *See Barbera v. Brod–Dugan Co.*, 770 S.W.2d 318 (Mo.Ct.App.1989). Plaintiffs acknowledge this fact but argue that the law of Iowa, rather than the law of Missouri, applies to the parental consortium claims. Not surprisingly, Iowa recognizes a cause of action for loss of parental consortium. *See Gail v. Clark*, 410 N.W.2d 662 (Iowa 1987).

As is true in any federal diversity case where there is a conflict between the laws of two states, this court must apply the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Missouri has adopted the "most significant relationship" test of Section 145 of the Restatement (Second) of Conflict of Laws (Restatement). *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo.1969) (en banc). Under this test, the court must evaluate the contacts that each interested state has in the cause of action and determine which state "has the most significant contacts" with the lawsuit. *Id.* Accord *Medical Protective Co. v. Bell*, 716 F.Supp. 392, 396 (W.D.Mo.1989); *Carver v. Schafer*, 647 S.W.2d 570, 576 (Mo.Ct.App.1983).

In performing this balancing, the court must consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."[2] Each of these contacts must "be

---

1. A motion regarding conflicts over the proposed scheduling order is also pending. The parties have informed the court that they are resolving the problems stated in that motion and, therefore, have asked the court to delay its ruling on that motion.

2. These contacts must also be weighed against "the factors relevant to the choice of the applicable rule of law," stated in section 6 of the Restatement. These factors include

 (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those

evaluated according to their relative importance with respect to the particular issue." Restatement § 145. Section 146 of the Restatement provides specific guidance for analyzing conflicts questions resulting from personal injury lawsuits, stating that

> the local law of the state where the injury occurred determines the rights and liabilities of the parties, *unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurence and the parties*, in which event the local law of the other state will be applied (emphasis added).

The parties agree that both Mary Wright's injury and the conduct causing those injuries occurred in Missouri. Thus, it is clear that Missouri law applies to the underlying medical malpractice and products liability claims. Plaintiffs argue, however, that because they are Iowa residents, and the loss of parental consortium claims center on the familial relationship based in that state, the law of Iowa should apply to the consortium claims. Put in slightly different terms, plaintiffs argue that a claim for loss of parental consortium is one of those "particular issues" mentioned in section 146 where the state of Iowa has such a significant relationship to the claim that its law should apply, even though the majority of events surrounding the lawsuit occurred in Missouri.

A number of courts have explained the reasoning behind this section 146 language. For example, the Iowa Supreme Court, which applies the most significant relationship test, held that when a lawsuit contains a derivative claim for loss of spousal consortium[3] the derivative claim is governed by the law of the state of the marital domicile. *Berghammer v. Smith*, 185 N.W.2d 226 (Iowa 1971). In making this decision the court emphasized that the state of the marital domicile, in this case Minnesota,

> has the most significant—indeed, perhaps the only—relationship with plaintiff and the issue of her right to maintain an action for loss of consortium. We reach this conclusion because only Minnesota is concerned with the marital status of plaintiff and the interspousal rights and duties arising therefrom.
>
> Iowa has no state interest to protect. No party is an Iowa resident. Iowa's legitimate concern to protect its citizens who may have rendered services to one involved in an accident here is not a factor, since a claim for loss of consortium would not give rise to such services.

*Id.* at 231. Unlike the *Berghammer* case, some of the defendants to the instant case are Missouri residents. Even noting that distinction, however, the reasoning of *Berghammer* applies to this case since in both instances the interests of the state where the accident occurred include protecting citizens of that state and ensuring that adequate standards of safety exist and are followed. A loss of consortium claim does not touch either interest. *Id.* at 232.

Similarly, in *Sullivan v. Bankhead Enterprises, Inc.*, No. 84–1186–N (D.Mass. 1986) (unpublished opinion) (available on Westlaw at 1986 WL 13947), the court held that a derivative claim for loss of spousal consortium was governed by the law of Massachusetts, the marital domicile, even when the accident and the injury giving rise to the loss of consortium claim occurred in Maine. In reaching this decision the court applied section 145 and held that "Massachusetts has a stronger interest in determining the rights and liabilities of its residents vis-a-vis each other than does Maine." *Id.* Accord *Felch v. Air Florida*,

---

states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

**3.** The court recognizes that the instant motion concerns a claim for loss of parental consortium rather than a claim for loss of spousal consortium. No cases have been found by either the parties or the court, however, concerning the conflicts issue as it specifically relates to claims for loss of parental consortium. The court concludes that the loss of spousal consortium claims noted, *infra*, are sufficiently analogous to present a starting point for analysis.

*Inc.*, 562 F.Supp. 383, 387 (D.D.C.1983) (District of Columbia, as site of accident, has little or no interest in the marital relationship of Virginia residents for purposes of a loss of consortium claim); [4] *Avis Rent–A–Car Systems, Inc. v. Abrahantes*, 559 So.2d 1262 (Fla.App.1990) (available on Westlaw at 1990 WL 45514), *motion for rehearing pending* (court holds that under section 145 of the Restatement "[c]laims for loss of consortium are governed by the law of the state where the marriage is domiciled, rather than by the law of the state where the injury occurred").

Although not controlling, it is useful to note that in conflicts questions involving the issue of intrafamily immunity, the Restatement specifically provides that "[t]he applicable law will usually be the local law of the state of the parties' domicil." Restatement § 169. *See also Potter v. St. Louis–San Francisco Railway Co.*, 622 F.2d 979, 983 (8th Cir.1980) (in situation where collision occurred in Missouri and the driver and his wife were residents of Michigan, Michigan law controlled the interspousal immunity question raised by defendant's contribution claim against the husband).

One of the principal reasons underlying the promulgation of section 169 is "to foster and preserve marital harmony and parental discipline" by granting intrafamily immunity from tort liability. Comment (b) to Restatement § 169. A similar, though admittedly not identical, interest is at stake in a situation involving the question of loss of parental consortium: a desire to preserve "the relationship between parent and child and the right of the child to the intangible benefits of companionship, comfort, guidance, affection and aid of the parent...." *Gail*, 410 N.W.2d at 668. Thus, as is true in cases involving questions of intrafamily immunity, the interest of the

state of Iowa in maintaining the parent/child relationship must be considered in evaluating the contacts noted by section 145. Section 169 provides guidance in that area and suggests application of the law of the state in which the family is domiciled.

Not all courts agree that loss of consortium claims should be governed by the law of the state of marital or familial domicile. In both *Sestito v. Knop*, 297 F.2d 33, 34 (7th Cir.1961) and *Miller v. Holiday Inns, Inc.*, 436 F.Supp. 460, 462 (E.D.Va.1977), the court rejected the view that the law of the marital domicile controls loss of consortium claims and held that such claims must be decided under the same law as is the main claim since the consortium claim is merely derivative. Both *Sestito* and *Miller* are distinguishable, however, since both were decided under the doctrine of *lex loci delicti* rather than the more modern significant relationship test of section 145.

Defendants rely heavily on *Casey v. Manson Construction and Engineering Co.*, 247 Or. 274, 428 P.2d 898 (1967) (en banc), a case decided at a time when the applicable Restatement sections were in draft form. Plaintiff in *Casey* brought suit for loss of consortium after her husband sustained injuries as a result of defendants' negligence. Both plaintiff and her husband were residents of Oregon at the time and the injuries occurred in neighboring Washington. After stating its intention to abandon the traditional rule of *lex loci delicti* in favor of the then fledgling section 145 analysis, the Oregon Supreme Court held that Washington, as the place of the accident, had the most significant relationship to the facts underlying the lawsuit. *Id.* 428 P.2d at 907. In reaching this decision the court noted that the plaintiff's cause of action was derivative to her husband's action for negligence and that, consequently, the law of the state where the

**4.** Defendants argue that this case is inapposite because it was decided under the "governmental interest" analysis, rather than pursuant to section 145. Although the court explains the governmental interest test in its opinion, it also specifically states that "the choice of law principles of the District of Columbia (in accordance with the Restatement, Second, of the Law of Conflict of Laws) provide that the law of the state with the most significant relationship to the matters at issue" governs the case. *Felch*, 562 F.Supp. at 385. Thus, the court finds the citation to be relevant.

underlying injury occurred should govern. *Id.* 428 P.2d at 907.

This court has carefully considered the arguments advanced by both plaintiffs and defendants in the instant case and concludes that while *Casey* supports defendants' position, the majority view, and the more recent trend, is that the law of the family domicile governs a conflicts question in an action for loss of either spousal or parental consortium. This result is consistent with the language of section 146 which provides that if one state has a significant relationship to a particular issue in the case, the law of that state should govern resolution of the issue. Precisely such a situation exists in the instant case. While Missouri has a significant interest in the issues involved in the underlying medical malpractice and products liability claims, it has little, if any, interest in the loss of parental consortium claim which arises only because of a familial relationship centered in Iowa. Accordingly, it is

ORDERED that defendants' separate motions to dismiss plaintiffs Melinda Wright and Rachel Wright for failure to state a claim upon which relief may be granted are denied.