Steffen, C. J.,
with whom Springer, J. agrees, dissenting:
The majority concludes that Nevada should abandon the “vested rights” approach to determining choice of law in the area *1047 of torts, and then proceeds to adopt a hybrid rule that amounts to little more than the vested rights doctrine with a twist of lime.
I am of the opinion that the overwhelming trend among sister jurisdictions in favor of the “most significant relationship” doctrine is reflective of judicial sensitivity to the role of courts in promoting just and fair decisions in the area of tort law. I therefore write separately in dissent.
In theory, I need not criticize the old lex loci delicti (vested rights) rule, for the majority claims that it is abandoning the rule in Nevada. In its place, the majority has adopted a mathematical exercise that strongly defers to the vested rights rule absent a showing of an “overwhelming interest” in another state. Because the majority has essentially left the vitality of the vested rights doctrine intact, comment concerning the doctrine is warranted.
The United States Supreme Court fired a direct volley against the lex loci delicti doctrine with compelling force:
While the place of the accident is a factor to be considered in choice-of-law analysis, to apply blindly the traditional, but now largely abandoned [vested rights approach], would fail to distinguish between the relative importance of various legal issues involved in a lawsuit as well as the relationship of other jurisdictions to the parties and the occurrence or transaction.
Allstate Ins. Co. v. Hague, 449 U.S. 302, 316 n.22 (1981). Based upon the quoted material alone, the quality of the compaction of the constitutional soils upon which the vested rights doctrine rests must be questioned, and the reason is obvious. Individual justice will frequently be deserved in a jurisdiction where judicial blinders prevent a court from considering the various factors that should be weighed in determining conflicts of laws issues.
In Clark v. Clark, 222 A.2d 205, 207 (N.H. 1966), a fitting epitaph to the moribund lex loci doctrine was written:
That old rule [lex loci delicti] is today almost completely discredited as an unvarying guide to choice of law decisions in all tort cases. ... No conflict of laws authority in America today agrees that the old rule should be retained. See e. g. texts and articles by Cavers, Ehrenzweig, Hancock, Leflar, Morris, Reese, Rheinstein, Trautman, Tray nor, von Mehren and Weintraub, to mention only a few. No American court which has felt free to re-examine the matter thoroughly in the last decade has chosen to retain the old rule. It is true that some courts, even in recent decisions, have retained it. But their failure to reject it has resulted *1048 from an unwillingness to abandon established precedent before they were sure that a better rule was available, not to any belief that the old rule was a good one. The only virtue of the old rule, apart from the fact of its pre-existence, was that it was easy for a court to apply. It was easy to apply because it was a mechanical rule. It bore no relationship to any relevant consideration for choosing one law as against another in a torts-conflicts case.
(Citations omitted.)
The majority’s solution to the vested rights doctrine is a hybrid that retains allegiance to the old doctrine unless a party can demonstrate an “overwhelming” interest in the application of another state’s law. In the process of leaching ambiguity from the term “overwhelming,” the majority lists four factors similar to those used in the Restatement (Second) of Conflict of Laws, § 145, and then quantitatively concludes that an “overwhelming interest” exists if two or more of the factors are satisfied.
Unfortunately, the process of counting factors ignores qualitative contacts that should have a place of preeminence in choice-of-law analyses. The most significant relationship doctrine is designed to achieve a fair and just resolution to choice-of-law disputes by weighing the quality, not the quantity, of each state’s interest in a disputed issue. Thus, in evaluating the contacts involved in an analysis of significant relationships, the focus is on the quality of contacts rather than their quantity. Schwartz v. Schwartz, 447 P.2d 254, 257 (Ariz. 1968). Appropriately, the Restatement assigns no particular weight to any of the factors involved in the analysis. Indeed, one particularly strong interest can overcome three weaker interests. “The court’s analysis . . . does not turn on the number of contacts the event had with each jurisdiction, but, more importantly, on the qualitative nature of those contacts . . . .” Crim v. International Harvester Co., 646 F.2d 161, 163 (5th Cir. 1981); see also Moore v. Montes, 529 P.2d 716 (Ariz. 1975) (indicating that “clearly ... it is a qualitative, not quantitative, analysis of the contacts which is crucial to the resolution of the choice-of-law question”).
A qualitative evaluation under the most significant relationship doctrine promotes consideration of differing state policies and interests underlying the particular issue as factors for making the choice-of-law decision. Griffith v. United Air Lines, Inc., 203 A.2d 796 (Pa. 1964). Finally, the law of the state whose quality of contacts are the most significant will be applicable in resolving the disputed issue. Johnson v. Spider Staging Corp., 555 P.2d 997 (Wash. 1976); see also Schwartz, 447 P.2d at 257.
*1049 Turning now to the majority’s solution for Nevada, we are informed that the law of the forum (lex loci) will apply in tort cases unless “another state has an overwhelming interest” in an issue. A state other than the forum state will have an overwhelming interest in a disputed issue if a party can demonstrate that the other state satisfies two or more of the following four factors:
(a) it is the place where the conduct giving rise to the injury occurred;
(b) it is the place where the injury is suffered;
(c) the parties have the same domicile, residence, nationality, place of incorporation, or place of business and it is different from the forum state;
(d) it is the place where the relationship, if any, between the parties is centered.
The majority claims to have created a formula that will retain predictability, certainty and uniformity of result in most cases, but will allow sufficient flexibility to avoid unjust and irrational results in those few cases demanding deference to the law of another state. In disagreeing, I first note that the majority has changed the wording of the Restatement in three of the four factors quoted above sufficiently to create ambiguity and uncertainty. I will comment on the variations used by the majority because we are given no purpose or reasons for their adoption, and aside from the ambiguities they create, their use will retard opportunities for the promotion of uniformity in the meaning of terms and the law which they support, both locally and on a national level.
Factor (a) in the majority’s formula roughly corresponds with factor (b) in the Restatement which reads “the place where the conduct causing the injury occurred.” (Emphasis added.) By substituting the phrase “giving rise to” for the word “causing,” the majority creates an ambiguity arising out of an equivocation not normally used to describe causation, which is an element of a cause of action sounding in tort. Several factors somewhat remote from the causative event could “give rise to” or “contribute to” an injury, and I fail to see the rationale for introducing terminology that is conducive to uncertainty.
Factor (b), above, appears in the Restatement under subsection (a) as “the place where the injury occurred.” (Emphasis added.) The majority, in changing the word “occurred” to the word “suffered,” has arguably altered the basic meaning of the factor. An injury can occur in the forum state, but be primarily suffered in the injured party’s place of domicile. Indeed, based upon the finding by the majority that the injury was suffered by the *1050 Motenkos in Massachusetts because they reside there, the majority seemingly interprets their own language to refer to the state where the impact of the injury is most strongly or enduringly felt. Such an interpretation would be highly relevant in a qualitative evaluation of the impact on another state of an injury occurring in the forum state. Since the majority’s formula leaves no room for qualitative analysis, however, it would appear that this factor is simply viewed by the majority, at least in the present case, as a synonym for place of residence. Thus, if a party injured in Nevada will do most of his or her suffering in another state, that factor will be satisfied. Here, although both the mother who sustained personal injury, and her son, Allen, who suffered the “injury” occurring through loss of parental consortium, were in Las Vegas at the time of the occurrence upon which liability is based, their home was in Massachusetts, where they would continue to feel the loss of parental consortium. Although I do believe that the Restatement language referring to the place where the injury occurred could be viewed, at least under the circumstances of the instant case, as being synonymous with the majority’s use of the term “suffered,” I see little reason to introduce a term that will not benefit from developing and refining decisional law throughout the nation.
The majority’s factor (c) is vastly more restrictive than the corresponding language under factor (c) of the Restatement, which states “the domicile, residence, nationality, place of incorporation and place of business of the parties” shall be a contact taken into account in determining the law applicable to an issue. The majority would require the litigants to have commonality of domicile, etc., and the place commonly shared would have to be outside the forum state, that is, outside the State of Nevada. Again, the majority provides no explanation for the substantial change wrought by their choice of language, and I see none other than to assure continued vitality in the lex loci delicti doctrine.
Factor (d) as adopted by the majority is identical to the same factor written in the Restatement.
In analyzing the four factors adopted by the majority, the majority concludes that only factor (b) (the place where the injury is suffered) “counts” toward the application of Massachusetts law, therefore Massachusetts is one factor short of having its local law apply in resolving the issue of loss of parental consortium. Unfortunately, the majority has “stacked the deck” to the point where the place of the tort will continue to determine the choice of law in the overwhelming majority of the cases.
Assuming, with some uncertainty, that factor (a) will be construed by the majority to mean the place where the conduct *1051 causing the injury occurred, then invariably, the only occasion when the local law of another state might apply in the resolution of a disputed issue would be where all parties share the same domicile, residence, nationality, etc., and the shared place is outside of Nevada. Indeed, if the instant case had not presented an issue of parental consortium, factor (b), the place where the injury is suffered, may have been construed to mean the place where the injury occurred, i.e., Nevada. Moreover, in cases where personal injury and the extent thereof is suffered (occurred?) in Nevada, and forms the only basis for liability, even the commonality of the place of domicile, etc., outside of Nevada would not provide a sufficient basis for applying the local law of another state (depending, of course, on the interpretation given to the word “suffered”). In short, the “flexibility” written into the new mathematical rule by the majority is far more illusory than real, and provides little consideration to the policies and interests implicated in the just resolution of issues that require choice-of-law decisions.
If the majority had adopted the position taken by the Restatement, the following analysis would apply:

The place where the injury occurred

This factor could arguably favor applying the law of either Nevada or Massachusetts in resolving the Motenkos’ claim for loss of parental consortium. Nevada could be considered the place of injury because Beth Motenko was injured in Las Vegas and a claim for loss of consortium is derivative of that injury. The local law of Massachusetts could also qualify under this factor because that is the place of the Motenkos’ domicile and where the son, Allen Motenko, will primarily suffer the loss of his mother’s consortium.
Loss of parental consortium is a relatively new cause of action and much of the analysis concerning the place of injury regarding this claim would parallel that of its analogue, loss of spousal consortium. “A minor child has a strong interest in his parent’s society, an interest closely analogous to that of the spouse in a normal loss of consortium claim.” Ferriter v. Daniel O’Connell’s Sons, Inc., 413 N.E.2d 690, 692 (Mass. 1980).
An argument favoring the application of Nevada law is that the law of the place of the injury to the spouse (parent) applies because that is where the last event necessary to create liability occurred. Sesito v. Knop, 297 F.2d 33 (7th Cir. 1961); Jordan v. States Marine Corp., 257 F.2d 232 (9th Cir. 1958). An action for loss of consortium can also be viewed as derivative of the primary harm to the physically injured spouse (parent). Miller v. *1052 Holiday Inns, Inc., 436 F. Supp. 460 (E.D. Va. 1977) (concluding that because of the derivative nature of loss of consortium claims, the location of the marital domicile is irrelevant and the claim must be decided under the same law as the main claim). These authorities support the proposition that in an action for loss of consortium, the law of the place of the primary physical injury to the parent would apply because the action is derivative of the parent’s action for personal injury.
The argument favoring the application of Massachusetts’ law notes that although the conduct causing the injury occurred in Nevada, the injury will be suffered primarily where the relationship between Allen Motenko and his injured mother is domiciled. Equally applicable to loss of parental consortium is the ruling in Avis Rent-A-Car Systems v. Abrahantes, 559 So. 2d 1262, 1264 (Fla. App. 1990), that
“[cjlaims for loss of consortium are governed by the law of the state where the marriage is domiciled, rather than by the law of the state where the [physical] injury occurred. . . . The state in which the marriage is domiciled has a greater interest... in a loss of consortium case, than does the state where the incident occurred.”
See also Linnell v. Sloan, 636 F.2d 65 (4th Cir. 1980) (concluding that, although the physical injury was suffered in Iowa, Minnesota has the most significant relationship with the issue of an action for loss of consortium); Wright v. Minter, 736 F. Supp. 1024, 1028 (W. D. Mo. 1990) (“the majority view, and the more recent trend, is that the law of the family domicile governs a conflicts question in an action for loss of either spousal or parental consortium”); Berghammer v. Smith, 185 N.W.2d 226 (Iowa 1971) (within the District of Columbia’s choice-of-law rules, the law of the state of the marital domicile rather than the law of the state where the wrong occurred should control a loss of consortium action).
I am of the opinion that under the most significant relations test, this factor concerning the place where the injury occurred should be dispositive in applying the local law of the state of Massachusetts to the resolution of this issue. Unfortunately, since the majority looks only to quantity of contacts rather than quality, this most significant of all contacts falls by the wayside.

The place where the conduct causing the injury occurred

This factor favors the application of Nevada law. The conduct that resulted in the loss of parental consortium occurred in Las Vegas. In my view, however, this factor does not approach the *1053 significance of the place where the injury to the parent-child relationship occurred.

The domicile, residence, nationality, place of incorporation and place of business of the parties

This factor should be of no consequence because it applies to both Nevada and Massachusetts. The Desert Inn is a subsidiary of MGM, Inc. and is incorporated and domiciled in Nevada, whereas the Motenko family is domiciled in Massachusetts. Note, however, that because of the change in the language of the Restatement wrought by the majority, this factor would be counted against the Motenkos in the wooden application of the majority’s mathematical formula.

The place where the relationship, if any, between the parties is centered

Because there is no relationship between Allen Motenko and the Desert Inn, neither has a superior interest and this factor becomes a non-factor. Again, however, because of the majority’s wooden formula, this factor actually weighs against Allen Motenko. Under a qualitative analysis embraced by the majority of courts that have felt unencumbered by the legally unsound lex loci delicti doctrine, the local law of Massachusetts clearly has the most significant relationship to the Motenko’s claim for loss of parental consortium. Unfortunately, the majority has given lip service to abandoning the old vested rights doctrine, but in reality has embraced it anew under the strictures of the mathematical formula the majority has crafted from the rule of reason and fairness adopted by the Restatement.
I am strongly of the opinion that this court should adopt the Restatement (Second) Conflicts of Laws most significant relationship approach as the most equitable method for resolving choice-of-law problems in tort cases. In my view, the majority has created a wooden hybrid rule that essentially retains the evils of the vested rights doctrine, and provides precious little promise for the resolution of conflicts issues in accordance with judicial sensitivity to considerations of justice and fairness. It is true that the majority’s rule will provide ease of application, but I suggest that courts of law should have no part in exalting easily applied rules over less facile methods that are calculated to secure a just and fair result in the resolution of disputes. Ease of application alone should never be the basis for adopting rules to be used in determining the rights of litigants.
For the reasons discussed above, I would reverse the order entered by the district court and allow the Motenkos to pursue *1054 Allen’s claim for loss of parental consortium based upon the local law of Massachusetts. I therefore respectfully dissent.