**WESTERN HELICOPTER SERVICES, INC., an Oregon corporation; and Edwina Marie Cruse, as Personal Representative of the Estate of Russell Leroy Cruse, Deceased, Plaintiffs,**

v.

**ROGERSON AIRCRAFT CORPORATION, a California corporation; Rogerson–Hiller Corporation, a Washington corporation; Omneco, Inc., a Nevada corporation; Embee Ep Plating, a California corporation; Arden Engineering, a California corporation; Burbank Steel Treating, Inc., a California corporation, Defendants.**

**Civ. No. 87–1435–FR.**

United States District Court, D. Oregon.

Jan. 19, 1990.

Lloyd B. Ericsson, Lisa Brett Egan, Timothy E. Miller, Martin, Bischoff, Templeton, Ericsson & Langslet, Portland, Or., for plaintiffs.

James L. Hiller, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young,

Portland, Or., for defendants Rogerson Aircraft Corp. and Rogerson–Hiller Corp.

Dean D. DeChaine, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for defendant Omneco, Inc.

John P. Ashworth, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant Embee EP Plating.

Thomas M. Christ, Mitchell, Lang & Smith, Portland, Or., for defendant Arden Engineering.

Richard M. Layne, Barbara J. Gazeley, Garvey, Schubert & Barer, Portland, Or., for defendant Burbank Steel Treating, Inc.

FRYE, District Judge:

The matters before the court are the motions for summary judgment of defendants Omneco, Inc. (Omneco) (# 105); Embee EP Plating (Embee) (# 112); Burbank Steel Treating, Inc. (Burbank) (# 116); and Rogerson Aircraft Corporation and Rogerson–Hiller Corporation (the Rogerson parties) (# 119 and # 121).

## BACKGROUND

This is a products liability case arising from a helicopter crash which occurred on January 16, 1986 and which resulted in the death of the pilot, Russell Leroy Cruse (the decedent). The plaintiffs are Western Helicopter Services, Inc. (Western), an Oregon corporation which employed the decedent, and Edwina Marie Cruse, the Personal Representative of the Estate of Russell Leroy Cruse (the estate). Western seeks damages for the loss of the helicopter. The estate seeks damages for the wrongful death of the decedent.

The complaint was filed on December 24, 1987, naming as defendants the sellers and the manufacturers of the helicopter. On February 7, 1989, an amended complaint was filed adding fifteen new defendants who allegedly were involved in the manufacture, installation or maintenance of the main rotor blade forks for the helicopter.[1] In the amended complaint, as in the original complaint, the plaintiffs allege that the helicopter crashed due to a defect in the main rotor blade forks (the forks or helicopter forks).

## UNDISPUTED FACTS

Western purchased the helicopter from Hiller Aviation in October, 1980. Omneco manufactures helicopter forks and other parts for helicopters, and has supplied helicopter forks to Hiller Aviation. Embee performs certain steps in the manufacture of helicopter forks, such as the cadmium plating and shot-peening of certain areas of the forks. Burbank performs heat treating of helicopter forks. Both Embee and Burbank have worked on helicopter forks which were supplied by Omneco to Hiller Aviation. The helicopter was inspected and/or overhauled by Hiller Aviation on November 7, 1983.

On January 23, 1984, Hiller Aviation filed a Chapter 11 petition in bankruptcy. At that time, Bank of America and Soloy Conversion Ltd. (Soloy) held security interests in many of the assets of Hiller Aviation. On March 6, 1984, Rogerson Aircraft entered into a purchase and sale agreement with Bank of America pursuant to which Rogerson Aircraft purchased the rights of Bank of America in the assets of Hiller Aviation and the claims of Bank of America against Hiller Aviation. On June 11, 1984, the bankruptcy court terminated the automatic stay as against Rogerson Aircraft, allowing foreclosure of the security interests held by Rogerson Aircraft.

Also on June 11, 1984, the bankruptcy court approved Rogerson Aircraft's purchase of the remaining assets of Hiller Aviation, except for those assets in which Soloy had a security interest which was prior to the security interest of Rogerson Aircraft. The bankruptcy court's order states that the remaining assets were "sold to Rogerson subject to known and disclosed liens, but otherwise free and clear of claims, interests, liens and encumbrances." (Exhibit B to Pizinger Affidavit, p. 3.)

Rogerson Aircraft subsequently transferred the assets of Hiller Aviation to Rogerson–Hiller Corporation, a subsidiary of

---

1. Some of the defendants have since been voluntarily dismissed by the plaintiffs.

Rogerson Aircraft. The claims of Western and the estate against Rogerson Aircraft and Rogerson–Hiller are premised on a theory of successor liability.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981).

## ANALYSIS AND RULING

Five defendants move for summary judgment against the plaintiffs' claims. Omneco, Embee and Burbank move for summary judgment on the grounds that they were not involved in the processes of manufacturing or finishing the helicopter fork which failed and caused the accident. The Rogerson parties move for summary judgment on the grounds that they are not responsible on a theory of successor liability for helicopters manufactured by Hiller Aviation.

1. *Motion of Omneco, Embee and Burbank*

■ Omneco and its subcontractors, Embee and Burbank, contend that they had nothing to do with the forks which were on the helicopter at the time of the accident, and therefore there is no basis for the allegations against them.

The facts are undisputed that the forks that were on the helicopter at the time of the accident bear serial numbers 10391–P and 10389–P. The parties agree that the accident was caused by the failure of the fork bearing serial number 10391–P. The records of Western show that when the helicopter was purchased in October, 1980, the helicopter had forks bearing serial numbers 10390P and 10392P. These forks were supplied by Omneco and had been worked on by Embee and Burbank.

The helicopter was inspected and/or overhauled on November 7, 1983. Western's records show that at that time the original forks, bearing numbers 10390P and 10392P, were on the helicopter. It is not known how the helicopter came to have forks bearing serial numbers different from those listed in Western's records.

Omneco, Embee and Burbank argue, for a number of reasons, that the forks on the helicopter at the time of the accident were not forks which were manufactured, supplied, treated or repaired by them. Western and the estate respond that there are genuine issues of material fact on this issue because 1) Omneco, Embee and Burbank do not consistently follow their own procedures; 2) the records of Omneco, Embee and Burbank contain errors; and 3) the scientific evidence is subject to more than one interpretation.

Western and the estate brought to the hearing examples of helicopter forks manufactured by Omneco which do not display some of the characteristics claimed by the defendants. Omneco, Embee and Burbank object that evidence regarding the condition of other helicopter forks is irrelevant. However, Omneco, Embee and Burbank have opened the door to such evidence by arguing that their forks consistently show certain characteristics, and that their records accurately reflect the characteristics of their forks.

In its motion for summary judgment, Omneco lists ten reasons why the accident forks cannot be forks manufactured by Omneco. Burbank listed an additional three reasons. Burbank now concedes that

there are issues of fact as to its three reasons. With respect to the ten reasons listed by Omneco, Western and the estate have responded to nine of the reasons with evidence that Omneco's records could be wrong or that Omneco did in fact manufacture some forks with the disputed characteristics. These characteristics include the placement and appearance of serial numbers on the forks, the type of cadmium plating used on the forks, the extent of shot-peening on the forks, and various marks left on the forks in the manufacturing process.[2]

At the hearing, Omneco focused on only one of its ten points regarding the presence of a bushing in the fork which failed.

Omneco's records show that a bushing was placed in the fork bearing serial number 10391P in order to correct an oversized hole in the fork end. Omneco's records show that this was done at the request of Western after Western inspected the shipment of forks. However, the fork which failed apparently has no bushing in the hole in the fork end. Omneco contends that the presence of a bushing would be obvious upon visual inspection, and that the hole in the fork which failed has no bushing and is not oversized.

Western and the estate respond that although there does not appear to be any bushing in the fork which failed, so many inaccuracies have been pointed out in Omneco's records that a jury could reasonably find that Omneco's records regarding a bushing in fork number 10391P are simply wrong. In light of the number of other points on which Omneco's affidavits or records have been shown to be subject to dispute, the court finds that genuine issues of material fact preclude summary judgment on this point.

Therefore, the motions for summary judgment of Omneco, Embee and Burbank are denied.

## 2. Motion of the Rogerson Parties

Rogerson Aircraft and Rogerson–Hiller contend that they are not subject to successor liability for helicopters manufactured by Hiller Aviation. The Rogerson parties argue that Oregon law should be applied, and that under Oregon law, a corporation which purchases the assets of another company is not liable for injuries caused by the products of the other company. The Rogerson parties argue that none of the exceptions to this rule apply in the present case.[3]

Western and the estate contend that this case should be governed by the law of the State of California or the State of Washington rather than the law of the State of Oregon. Western and the estate argue that the court should apply the "product line" exception to the rule limiting successor liability, which was created by the California Supreme Court and which has been adopted by a minority of jurisdictions, including the State of Washington. Western and the estate concede that the Oregon courts have not adopted the product line exception, but argue that if Oregon law is applied, the court should find that the Ore-

2. Omneco objects to the affidavits of Gary Landsberg, an investigator with the Martin, Bischoff law firm, and of Lisa Brett Egan and Timothy E. Miller, who are attorneys with the Martin, Bischoff firm, the attorneys for the plaintiffs. Omneco objects that since none of these affiants are metallurgists or experts in the manufacturing of helicopter forks, they are not competent to make statements of opinion regarding shot-peening and other matters concerning forks.

Each of these affiants recounts that he or she has located helicopter forks produced by Omneco, and describes various visual characteristics of those forks. These are observations which do not necessarily require metallurgical expertise. The lack of expertise of these witnesses goes to the accuracy and weight of their testimony, not to its admissibility. Therefore, Omneco's objections to the affidavits of Landsberg, Egan and Miller are overruled.

3. The Rogerson parties also move in the alternative for partial summary judgment on the issue of whether the accident fork was a genuine fork manufactured by Hiller Aviation. The Rogerson parties ask that the court address this motion only if it denies the motions on the issue of successor liability but grants the motions of Omneco, Embee and Burbank for summary judgment. As the court has denied the motions of Omneco, Embee and Burbank, it is not necessary to reach the Rogerson parties' alternative motion.

gon courts would adopt the product line exception.

The Rogerson parties reply that the law of the State of Oregon should be applied in this case, and that the Oregon courts are unlikely to adopt the product line exception. The Rogerson parties also contend that this case does not meet the requirements for the product line exception, even if that doctrine is applicable.

Under the doctrine of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity must apply the substantive law of the forum in which it is sitting, in this case the State of Oregon. Where there is an issue regarding the choice of law, the federal court must apply the conflict of law analysis used by the courts of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The State of Oregon applies a two-step analysis of choice of law issues, in which the first step is to determine whether an actual conflict of law exists. If there is an actual conflict of law, the court must then determine which state has the most significant relationship to the action. *Erwin v. Thomas,* 264 Or. 454, 456–57, 506 P.2d 494 (1973).

■ Therefore, the court must determine whether the law of the States of California and Washington differs from the law of the State of Oregon on the issue of successor liability. In 1977, the California Supreme Court created an exception to the traditional rule regarding successor liability, which is known as the "product line" exception. *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977). The product line exception has been adopted by a minority of jurisdictions, including the State of Washington. *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368 (1984).

The appellate courts of the State of Oregon have neither accepted nor rejected the product line exception. Where a decision turns upon the substantive law of a state, and that state's highest court has not decided the issue, a federal district court must make its best determination of how the state's highest court would resolve the issue. *Takahashi v. Loomis Armored Car Serv.,* 625 F.2d 314, 316 (9th Cir.1980).

The Oregon courts have consistently followed the traditional rule regarding successor liability, which is stated in *Erickson v. Grande Ronde Lumber Co.,* 162 Or. 556, 568, 94 P.2d 139 (1939):

"The general rule is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor. * * *

"To this general rule there are four well recognized exceptions, under which the purchasing corporation becomes liable for the debts and liabilities of the selling corporation. (1) Where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts."

(quoting *West Texas Ref. & Dev. Co. v. Commissioner,* 68 F.2d 77 (10th Cir.1933)).

This court recently applied the traditional rule regarding successor liability in a products liability action, *Schmoll v. ACandS, Inc.,* 703 F.Supp. 868 (D.Or.1988) (Panner, J.). In *Schmoll,* the court found that the fourth exception to the traditional rule applied because the successor corporation had been formed for the purpose of escaping liability for judgments against its predecessor in asbestos litigation. 703 F.Supp. at 873.

Western and the estate have presented no evidence which could support application of one of the four traditional exceptions. Their claim of successor liability relies solely on the application of the recently created product line exception. In *Ray v. Alad Corp., supra,* 19 Cal.3d at 31, 136 Cal.Rptr. 574, 560 P.2d 3, the California Supreme Court held that a successor who continued a product line could be held liable in a

products liability action where the court finds:

(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

The appellate courts of the State of Oregon have not considered the applicability of the product line exception. Western and the estate urge the court to find that the Oregon Supreme Court would adopt the product line exception because the States of Oregon, Washington and California share the same underlying policy of imposing strict products liability on the manufacturer of a defective product. However, despite the acceptance of the theory of strict products liability, the Oregon courts have not adopted some of the expansive theories of liability adopted by the courts of the States of California and Washington.

In *Senn v. Merrell–Dow Pharmaceuticals, Inc.*, 305 Or. 256, 751 P.2d 215 (1988), the Oregon Supreme Court refused to adopt a theory of alternative liability, concluding that such a profound expansion in the law was the province of the legislature. 305 Or. at 271, 751 P.2d 215. In *Donaca v. Curry County*, 303 Or. 30, 36, 734 P.2d 1339 (1987), the court declined to adopt a "loss-spreading" rationale in a products liability case.

The decisions of the Oregon Supreme Court give little indication that the court would adopt the product line exception. The majority of the courts which have considered the issue have refused to adopt the product line exception. *See, e.g., Dayton v. Peck, Stow and Wilcox Co.*, 739 F.2d 690, 694 (1st Cir.1984) (Holding that Massachusetts courts would not adopt the product line theory, the court stated: "Although a few jurisdictions have adopted the holding

and rationale of *Ray* ... the majority appear to adhere to the traditional rule."); *Giraldi v. Sears, Roebuck & Co.*, 687 F.Supp. 987, 991 (D.Md.1988) (Holding that Maryland courts would not adopt the product line theory, the court stated: "State courts, and federal courts sitting in diversity, have declined to follow the lead of California and New Jersey.")

█ Therefore, the court finds that the Oregon Supreme Court is unlikely to adopt the product line exception, and would most probably hold to the traditional rule regarding successor liability. Western and the estate have presented no evidence which could support the application of one of the four exceptions to the traditional rule. Accordingly, if the law of the State of Oregon is applied, the claims against Rogerson Aircraft and Rogerson–Hiller must fail as a matter of law.

In determining the law to be applied in a tort action, the courts of the State of Oregon apply the "most significant relationship" approach expressed in the Restatement (Second) Conflict of Laws (1971). *Casey v. Manson Constr. and Eng'g Co.*, 247 Or. 274, 287–88, 428 P.2d 898 (1967). The courts consider a number of factors in determining which state has the most significant relationship with the occurrence and the parties: 1) the place where the injury occurred; 2) the place where the tortious conduct occurred; 3) the domicile, nationality, place of incorporation, and place of business of the parties; and 4) the place where the relationship, if any, between the parties is centered. 247 Or. at 279, 428 P.2d 898.

The weight to be given the various factors varies in particular types of cases. In cases arising from a fatal air crash, the Oregon Supreme Court has indicated that the applicable law is that of the state in which the injury occurred, unless some other state has a more significant relationship to the accident and to the parties. *Myers v. Cessna Aircraft Corp.*, 275 Or. 501, 514–15, 553 P.2d 355 (1976). The *Myers* court cited Restatement § 175, which states that "[i]n an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the

parties unless, with respect to the particular issue, some other state has a more significant relationship." 275 Or. at 515, 553 P.2d 355 (quoting Restatement § 175).

Comment f to section 175 provides, in relevant part:

> On occasion, conduct and injury will occur in different states. In such instances, the local law of the state of injury will usually be applied to determine most issues involving the tort.... The local law of the state where the injury occurred is most likely to be applied when the decedent had a settled relationship to that state, either because he was domiciled or resided there or because he did business there.

The action before this court has connections with a number of states. The fatal crash occurred in the State of Oregon. Western and Edwina Cruse are citizens of the State of Oregon. The decedent, Russell Cruse, was a citizen of the State of Oregon. The helicopter was owned, hangared and maintained in the State of Oregon. Most of the defendants are California corporations, except for Rogerson–Hiller, which is a Washington corporation, and Omneco, which is a Nevada corporation. The helicopter fork which failed may have been manufactured by Omneco in the State of Nevada. The helicopter was manufactured in the State of California by Hiller Aviation and returned to Hiller Aviation at least once for service. The events relating to Hiller Aviation's bankruptcy and the subsequent acquisition of assets by the Rogerson parties were centered in the State of California.

The court finds that although the States of California, Washington and Nevada have some connection to this action, the state with the most significant relationship to the action is the State of Oregon. Unlike some of the cases cited by Western and the estate, the place of the injury was not fortuitous in this case. The helicopter was owned by a resident of the State of Oregon and operated in the State of Oregon. The decedent was a citizen of the State of Oregon. On the present record, the defective helicopter fork could have been created or installed in the States of Nevada, California, Oregon, or some other, unknown state. Therefore, the court gives greater weight to the state where the accident occurred rather than to any of the states where the tortious behavior may have occurred.

This finding is consistent with the approach of the Oregon Supreme Court in *Myers*, in which the court applied the law of the State of Oregon to a helicopter crash which occurred in British Columbia where the flight originated in the State of Oregon and the decedent and his family resided in the State of Oregon. 275 Or. at 515, 553 P.2d 355.

As discussed above, the State of Oregon has not adopted the product line exception, and the court finds that the Oregon Supreme Court is unlikely to do so. Therefore, Western and the estate have presented no evidence which could support a finding of successor liability against Rogerson Aircraft or Rogerson–Hiller. Accordingly, the motion for summary judgment of Rogerson Aircraft and Rogerson–Hiller is granted.

## CONCLUSION

The motions for summary judgment of Omneco (# 105), Embee (# 112) and Burbank (# 116) are denied. The motion for summary judgment of Rogerson Aircraft and Rogerson–Hiller (# 119) is granted. The alternative motion for partial summary judgment of Rogerson Aircraft and Rogerson–Hiller (# 121) is rendered moot. Omneco's objections to the affidavits of Landsberg, Egan and Miller are overruled.